UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-20521-GAYLES

**JANET BARR**,

    Plaintiff,

v.

**DETECTIVE DAVID DENMARK, et al.**,

    Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Amended Complaint with Prejudice (the "Motion"). [ECF No. 44]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

## BACKGROUND

**I.**    **Factual Background**[1]

On November 29, 2003, Jeffrey Barr ("Decedent") was shot and killed outside of his home. [ECF No. 41 ¶ 13]. At the time of the murder, Decedent's wife, Plaintiff Janet Barr ("Plaintiff"), and Veronika Spencer ("Spencer") were inside the home. *Id.* ¶ 12. Upon hearing what appeared to be gunshots, Plaintiff looked outside, saw Decedent lying on the ground, and called 911. *Id.* ¶¶ 13-14. Miami-Dade County Police Department ("MPDP") officers, including Defendant Detective

---

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Plaintiff's Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). The Court also considers the Arrest Warrant and Sworn Statement of Facts attached to Defendants' Motion to Dismiss, [ECF No. 44-1], because it is "referred to in the [Amended Complaint], central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018)

David Denmark ("Denmark"), arrived at the crime scene, interviewed Plaintiff and Spencer, and tested each of their hands for gun residue. *Id.* ¶¶ 15, 17-18. The tests were negative. *Id.* ¶¶ 17-18.[2]

During its initial investigation, MDPD discovered that Plaintiff received money as the beneficiary of Decedent's life insurance policy. *Id.* ¶ 20. Plaintiff used the insurance proceeds to pay for Decedent's funeral. *Id.* ¶ 21.

On March 18, 2009, six years after Decedent's death, the Escambia County Sheriff's Office informed MDPD that William Taylor ("Taylor"), an inmate at the Escambia County Jail and Plaintiff's half cousin, had information about Decedent's murder that he was willing to share in exchange for his release from a 90-month prison sentence. *Id.* ¶¶ 30-32, 37. Detective Denmark and Detective Nirso Pimentel ("Pimentel") met with Taylor who told them that Plaintiff offered him $20,000 for the murder of Decedent, which would be paid by insurance proceeds. *Id.* ¶ 39. According to Taylor, Plaintiff wanted to kill Decedent because he was abusive. *Id.* ¶ 40. Taylor informed Denmark and Pimentel that he refused to murder Decedent but agreed to be present when it happened. *Id.* ¶ 41. In addition, Taylor told Denmark and Pimentel that Plaintiff had also asked Tristan Semper ("Semper"), a convicted felon facing additional prison time, to kill Decedent. *Id.* ¶¶ 42-44. Denmark and Pimentel then met with Semper who told them that Plaintiff offered to pay him between $10,000 and $15,000 to murder Decedent, but he declined. *Id.* ¶¶ 44-45.

Taylor subsequently told Denmark and Pimentel that Plaintiff hired a man named "J Loo" to murder Decedent and provided the following details about the crime. *Id.* ¶¶ 47-48. On the night of the murder, J Loo and Taylor drove to Decedent's home in J Loo's vehicle. *Id.* J Loo parked the

---

[2] On April 24, 2009, Detectives Denmark and Daniel Rivers interviewed Spencer, who agreed to take a polygraph. The Amended Complaint alleges that no deception was indicated on Spencer's polygraph but provides no detail about the questions asked. [ECF No. 41 ¶ 54].

2

vehicle and got out with a dark colored revolver. *Id.* ¶ 49. Taylor, who stayed in the vehicle, then heard 2 gunshots. *Id.* J Loo returned to the vehicle and told Taylor that he had killed Decedent. *Id.*

On June 20, 2011, a warrant for Plaintiff's arrest was issued based on Denmark's Affidavit for Arrest Warrant (the "Affidavit"). [ECF No. 44-1]. In the Affidavit, Denmark detailed the evidence gleaned from MDPD's investigation into Decedent's murder, including that there was no evidence of a robbery at the scene of the crime and Plaintiff received money as the beneficiary of Decedent's life insurance policy. The Affidavit also recites the information Taylor provided to the Denmark and Pimentel including that (1) Taylor was in jail when he spoke with the Detectives; (2) Plaintiff approached both Taylor and Semper to kill Decedent; (3) Taylor was in a vehicle with J Loo before the murder; (4) J Loo had a dark colored revolver; (5) Plaintiff called J Loo just before the murder to confirm that Decedent was outside; (6) Taylor heard gunshots after J Loo left the vehicle; (7) J Loo told Taylor that he missed Decedent with his first shot because Decedent turned away; and (8) J Loo confirmed that he had killed Decedent. *Id.* Corroborating Taylor's statement that J Loo "shot twice", the Affidavit provides that "the autopsy revealed that the victim had stippling on his nose but no gunshot wound on the front of the face, indicating a shot was fired near his face from close range but did not strike him. The autopsy revealed the fatal gunshot wound was to the back of the neck, which would not have caused the stippling to the face." *Id.* The Affidavit also details Denmark and Pimentel's interview of Semper, who confirmed that Plaintiff had approached him to kill her husband. *Id.*

On June 21, 2011, Plaintiff was arrested on one count of murder in the first degree and one count of conspiracy to commit murder in the first degree. [ECF No. 41 ¶ 63]. A jury acquitted Plaintiff of all charges. *Id.*

## II. Procedural Background

On February 21, 2022, Plaintiff filed this action against Detectives Denmark, Pimentel, Daniel Rivers ("Rivers"), and Maria Mederos ("Mederos") in their individual capacities, alleging federal claims against them under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and abuse of process and Florida state-law tort claims for false arrest and malicious prosecution. [ECF No. 1]. Despite several extension of time regarding service, Plaintiff was unable to serve Rivers and Mederos. Accordingly, on November 3, 2022, the Court dismissed them from this action without prejudice. [ECF No. 29]. On November 8, 2022, Detectives Denmark and Pimentel (the "Defendants") moved to dismiss the Complaint, raising a qualified immunity defense. [ECF No. 31]. On November 16, 2022, the Court granted the Defendants' request to stay this action pending a ruling on their qualified immunity defense. [ECF No. 33]. Before the Court ruled on the motion to dismiss, Plaintiff filed an Amended Complaint. [ECF No. 41]. In the Amended Complaint, Plaintiff raises federal claims under § 1983 for false arrest and malicious prosecution and Florida state-law claims for false arrest and malicious prosecution.[3]

Defendants now move to dismiss the Amended Complaint arguing (1) the existence of probable cause and a valid arrest warrant bars Plaintiff's claims, (2) they are entitled to qualified immunity on Plaintiff's § 1983 claims, and (3) Plaintiff's state law false arrest claim is barred by statutory immunity. [ECF No. 44].

## LEGAL STANDARDS

### I. Motion to Dismiss

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[3] Although the Amended Complaint asserts renewed claims against Rivers and Mederos (Counts 3-4, 7-8, 11-12, 15-16), they have not been served with the Amended Complaint. Therefore, these claims are dismissed without prejudice.

4

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly[,]" *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold[.]" *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## II. Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become

intertwined." *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) (citation and internal quotation marks omitted).

An official who asserts an entitlement to qualified immunity must first establish that he or she was acting within the scope of his or her discretionary authority when the allegedly wrongful act occurred. *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016). Here, it is undisputed that Defendants were acting within their discretionary authority. With discretionary authority established, "the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate." *Id*.

To make that determination, the Court undergoes a two-pronged inquiry. First, the Court asks, "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (alterations in original) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)). Second, the Court asks, "whether the right in question was 'clearly established' at the time of the violation." *Id*. (quoting *Tolan*, 572 U.S. at 656). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012).

**DISCUSSION**

**I.     Plaintiff's Claims Under § 1983**

Plaintiff asserts § 1983 claims for false arrest and malicious prosecution. A "claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). Accordingly, "[t]he fact that a state judge issued a warrant in this case thus extinguishes [Plaintiff's] false arrest claim. Any objection [she has] must necessarily be towards the legal process, rather than the absence of legal process." *Spinnenweber v. Williams*, 825 F. App'x 730, 732-33 (11th Cir. 2020).

Plaintiff's § 1983 claim for malicious prosecution, unlike her false arrest claim, "requires a seizure pursuant to legal process." *Id.* (quoting *Williams*, 965 F.3d at 1158). To establish her malicious prosecution claim, Plaintiff "must show that the legal process was 'constitutionally infirm.'" *Id.* "In the context of an arrest warrant, [Plaintiff] can do so if [she] establish[es] 'either that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant.'" *Id.* "Where probable cause exists, a malicious prosecution claim will fail." *Pitts v. Grant*, No. 21-12759, 2022 WL 1117454, at *3 (11th Cir. Apr. 14, 2022).

Probable cause "is not a high bar[.]" *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) (citing *Brinegar v.*

*United States*, 338 U.S. 160, 175 (1949)). "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019).

A police officer may be held liable under § 1983 for submitting an application for an arrest warrant that contains false and misleading information or omits information. *See Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003); *Haygood v. Johnson*, 70 F.3d 92, 95 (11th Cir. 1995). But, to amount to a constitutional violation, that information must be so clearly material to a determination of probable cause "that every reasonable law officer would have known that [its] omission [or inclusion] would lead to a search [or seizure] in violation of federal law." *Haygood*, 70 F.3d at 95. In other words, "[t]here is no constitutional violation if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." *Stefani v. City of Grovetown*, 780 F. App'x 842, 850–51 (11th Cir. 2019) (internal quotations omitted).

In *Paez*, the Eleventh Circuit employed a two-part test for determining whether a misstatement or omission in a warrant affidavit constitutes a Fourth Amendment violation. 915 F.3d at 1287. "First, [the Court] ask[s] whether there was an intentional or reckless misstatement or omission." *Id.* At this stage, the Court must take Plaintiffs' allegations as true that the Detectives intentionally, or in reckless disregard for the truth, made false statements or omitted information in the Affidavit. Next, the Court "examine[s] the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Id.* (citation omitted).

*Alleged Misstatements*

The Amended Complaint does not allege that the Affidavit contains misstatements or misrepresentations. Rather, Plaintiff contends that Defendants should not have relied on Taylor and Semper's statements because they were felons.[4] Plaintiff misunderstands the requirements for probable cause. The Affidavit outlines a scheme by Plaintiff to murder Decedent. Because it is supported by witness statements and corroborating crime scene and autopsy evidence, the Affidavit is sufficient to establish probable cause. Indeed "[i]t is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018). *See also Sada v. City of Altamonte Springs*, 434 F. App'x 845, 850 (11th Cir. 2011) (holding that officers who interviewed various witnesses, whose statements were corroborative, had "more than enough for probable cause"); *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1313 (S.D. Fla. 2020) ("The bar [for probable cause] is so low that the Eleventh Circuit has found the statements of a single witness sufficient to establish probable cause."). Moreover, there is no prohibition on relying on the testimony of felons. Accordingly, the Amended Complaint does not set forth any materially misleading information that negates probable cause.

*Alleged Omissions*

Plaintiff also contends that Defendants neglected to include in the warrant that Plaintiff used all the insurance proceeds on her husband's funeral. [ECF No. 21]. This information is not material. That Plaintiff used the insurance proceeds to pay for Decedent's funeral does not alone

---

[4] In her response to the Motion to Dismiss, Plaintiff alleges that Defendants "procured the arrest warrant based on false information that they intentionally elicited and included in [the Affidavit] . . . ." [ECF No. 47 at 9]. However, Plaintiffs cannot amend the Amended Complaint "via a response to a motion to dismiss." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 n.6 (S.D. Fla. 2012) (citation omitted). Moreover, even if the Court could consider this new "allegation," Plaintiff fails to identify any fact in the Affidavit that was false.

negate probable cause for the crimes set forth in the Affidavit. *See Paez*, 915 F.3d at 1286 ("So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause.").

Accordingly, the Amended Complaint fails to state a claim for false arrest or malicious prosecution under § 1983.

## II.   Qualified Immunity

Even if Defendants did not have actual probable cause, they would still be entitled to qualified immunity. "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [officers] could have believed that probable cause existed to arrest [the p]laintiff." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (internal quotation omitted).

In cases alleging constitutional violations based on omissions or misstatements in arrest warrant affidavits, officers are entitled to qualified immunity "if the affidavits (including the omitted information [and excluding the misstatements]) would have demonstrated even arguable probable cause—that a reasonable officer <u>could have</u> believed an offense was committed[.]" *Paez*, 915 F.3d at 1288 (emphasis in original) (citation omitted). The question thus becomes "whether [the] affidavit contains other facts sufficient to show probable cause for an arrest warrant." *Rhodes v. Kollar*, 503 F. Appx. 916, 923 (11th Cir. 2013). If it does, the remaining probable cause or arguable probable acts as an "absolute bar" to § 1983 claims. *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995). Based on the facts set forth in the Affidavit, a reasonable officer could have

believed that Plaintiff had arranged for the murder of Decedent.[5] Because Defendants had arguable probable cause to arrest Plaintiff, they are entitled to qualified immunity as to Plaintiff's § 1983 claims. Accordingly, those claims are dismissed with prejudice.

### III. State Law Claims

Plaintiff's state law claims for false arrest and malicious prosecution must also be dismissed. First, like Plaintiff's § 1983 claim for false arrest, the existence of the warrant extinguishes Plaintiff's state law claim for false arrest. "Florida follows 'the general rule that an arrest pursuant to lawful authority, a [warrant] here, cannot be false.'" *Isom v. Bulso*, No. 18-cv-2035, 2020 WL 6481113, at * 11 (M.D. Fla. Sep. 29, 2020) (quoting *Jackson v. Navarro*, 665 So. 2d 340, 340 (Fla. 4th DCA 1995).

In addition, Plaintiff's state law claim for malicious prosecution fails. To state a claim under Florida law for malicious prosecution, Plaintiff must allege the following:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

---

[5] Plaintiff's acquittal has no bearing on whether probable cause or arguable probable cause existed at the time Defendants obtained the warrant. "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990); *see also Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."). The relevant inquiry in a qualified-immunity analysis is whether probable cause or arguable probable cause exists, "not whether an arrestee's conduct is a crime or ultimately will result in conviction." *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001). This is because "[p]olice officers are not expected to be lawyers or prosecutors." *Id.*

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). As detailed above, the allegations Amended Complaint and incorporated Arrest Affidavit do not demonstrate the absence of probable cause.[6] Moreover, Plaintiff fails to allege with any particularity that Defendants acted with malice. *See Cottam v. City of Wildwood*, 750 F. App'x 791, 795 (11th Cir. 2018) (holding that "[t]he existence of probable cause contradicts any suggestion of malicious intent or bad faith."). Accordingly, Plaintiff fails to state a claim under Florida law for malicious prosecution.

Finally, Defendants are immune from Plaintiff's state law claims under Florida's sovereign immunity statute which provides:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . .

Fla. Stat. § 768.28(9)(a). "Florida courts equate bad faith with the actual malice standard." *Gurrera v. Palm Beach County Sheriff's Office*, 657 F. App'x 886, 892 (11th Cir. 2016). Because the allegations in the Amended Complaint fail to establish that Defendants acted with actual malice, they are entitled to immunity from Plaintiff's claims under Florida law for false arrest and malicious prosecution. Plaintiff's state-law claims, therefore, shall be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss Amended Complaint [ECF No. 44] is **GRANTED**;

2. Plaintiff's claims against Detectives Denmark and Pimentel (Counts 1, 2, 5, 6, 9, 10, 13, and 14) are **DISMISSED with prejudice**.

---

[6] "The standard for determining whether probable cause exists is the same under Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).

3. Plaintiff's claims against Detectives Rivers and Mederos (Counts 3-4, 7-8, 11-12, 15-16) are **DISMISSED without prejudice.**

4. This case is **CLOSED,** and any pending motions are **DENIED as moot.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of May, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE